1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9

10

11

12

13

14

15

| | |
|---|---|
| DANIEL VELASQUEZ,<br><br>            Petitioner,<br><br>   v.<br><br>MICHAEL BENOV, Warden,<br><br>            Respondent.<br>_____ | 1:10-cv-01593 AWI MJS HC<br><br>FINDINGS AND RECOMMENDATION REGARDING RESPONDENT'S MOTION TO DISMISS PETITION<br><br>(Doc. 13) |

16

## I.   **INTRODUCTION**

17

18

19

20

      Plaintiff is a federal prisoner proceeding with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Pending before the Court is Respondent's Motion to Dismiss filed on February 17, 2011. (Mot. to Dismiss, ECF No. 13.)

21

22

23

24

25

26

27

      The instant Petition for Writ of Habeas Corpus was filed on September 2, 2010. (Pet., ECF No. 1.) The petition challenges the findings of a 2009 prison disciplinary hearing where Petitioner was found guilty of use of the telephone for abuses other than criminal activity. (Id. at 14.) In response, Respondent filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) contending that Petitioner had failed to state a claim upon which habeas relief could be granted. (Mot. to Dismiss.) On March 11, 2010, Petitioner filed a Traverse to the Motion to Dismiss. (Traverse, ECF No. 14.)

28

///

## I.     FACTUAL SUMMARY

On March 25, 2009, Petitioner received an incident report for a violation of code 397, use of the telephone for abuses other than criminal activity. (Mot. to Dismiss, Ex. A.) Prohibited Act Code section 397, set forth in 28 C.F.R. § 541.13, is referred to as a "moderate offense." Examples of such activity are listed in the regulation and include, "conference calling, possession and/or use of another inmate's PIN number, three-way calling, and providing false information for preparation of a telephone list." (Id.) On February 10, 2009, Petitioner was advised of his rights and signed an acknowledgment to that effect. (Id.)

On February 26, 2009, the disciplinary hearing was held. (Id.) The Disciplinary Hearing Officer ("DHO") was presented evidence in the form of an incident report from correctional officer Sy. The officer drafted a report which stated that on February 5, 2009, while monitoring Petitioner's recorded phone calls, the officer found that Petitioner allowed another inmate to use his Personal Identification Number ("PIN") to make telephone calls. (Id.) At the hearing, Petitioner admitted to allowing the other inmate to speak on the phone during his call, but denied giving other inmates his PIN. (Id.) The DHO reviewed the phone call in question, and found that Petitioner was the first to talk, and then allowed the other inmate to talk. (Id.) Based on the fact that there was no evidence that Petitioner provided his PIN to the other inmate, the DHO reduced the charge from a 'high severity' offense to a 'moderate severity' offense. (Id.) The DHO sanctioned Petitioner with thirteen days disallowance of good conduct time and three months loss of telephone privileges. (Id.)

In his petition, Petitioner raises two claims. First, he asserts that the disciplinary finding violated his due process rights because the language of the violation is ambiguous. Second, he asserts that Unit Disciplinary Committee ("UDC") members involved in the discipline process were not properly certified.

## II.     JURISDICTION

### A.     Subject Matter Jurisdiction

Relief by way of a writ of habeas corpus extends to a prisoner in custody under the authority of the United States who shows that the custody violates the Constitution, laws, or

treaties of the United States. 28 U.S.C. § 2241(c)(3). Although a federal prisoner who challenges the validity or constitutionality of his conviction must file a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255, a federal prisoner challenging the manner, location, or conditions of the execution of a sentence must bring a petition for writ of habeas corpus under 28 U.S.C. § 2241. Hernandez v. Campbell, 204 F.3d 861, 864-65 (9th Cir. 2000).

Petitioner asserts that, as a result of the  adverse ruling in the 2009 prison disciplinary proceeding, he suffered violations of rights guaranteed by the United States Constitution. On February 26, 2009, a DHO found that Petitioner had committed the prohibited act of use of the telephone for abuses other than criminal activity. (Mot. to Dismiss, Ex. A.) The disciplinary report was delivered to Petitioner on March 25, 2009. (Id.) As a result of the hearing, Respondent sanctioned Petitioner with thirteen days disallowance of good conduct time and three months loss of telephone privileges. (Id.)

"Habeas corpus jurisdiction is available under 28 U.S.C. section 2241 for a prisoner's claims that he has been denied good time credits without due process of law." Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989) (citing Preiser v. Rodriguez, 411 U.S. 475, 487-88 (1973)). Accordingly, the Court concludes that it has subject matter jurisdiction over the petition.

**B.     Jurisdiction Over the Person**

Title 28 U.S.C. § 2241(a) provides that writs of habeas corpus may be granted by the district courts "within their respective jurisdictions." A writ of habeas corpus operates not upon the prisoner, but upon the prisoner's custodian. Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 494-495 (1973). A petitioner filing a petition for writ of habeas corpus under § 2241 must file the petition in the judicial district of the Petitioner's custodian. Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990). The warden of the penitentiary where a prisoner is confined constitutes the custodian who must be named in the petition, and the petition must be filed in the district of confinement. Id.; Rumsfeld v. Padilla, 542 U.S. 426, 446-47 (2004). It is sufficient if the custodian is in the territorial jurisdiction of the court at the time the petition is filed; transfer of the petitioner thereafter does not defeat personal

jurisdiction that has once been properly established. <u>Ahrens v. Clark</u>, 335 U.S. 188, 193, 68 S. Ct. 1443, 92 L. Ed. 1898 (1948), overruled on other grounds in <u>Braden</u>, 410 U.S. at 493, citing <u>Mitsuye Endo</u>, 323 U.S. 283, 305 (1944); <u>Francis v. Rison</u>, 894 F.2d 353, 354 (9th Cir. 1990). A failure to name and serve the custodian deprives the Court of personal jurisdiction. <u>Johnson v. Reilly</u>, 349 F.3d 1149, 1153 (9th Cir. 2003).

Here, at all pertinent times, Petitioner was incarcerated at the Taft Correctional Institution (TCI) located within the Eastern District of California. Petitioner named Michael Benov, the Warden of TCI, as Respondent.

Accordingly, the Court concludes that it has personal jurisdiction over the custodian.

## III.   PROCEDURAL GROUNDS FOR MOTION TO DISMISS

Respondent has filed a motion to dismiss the petition for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. Proc. 12(b)(6). (Mot. to Dismiss, ECF No. 15.) Along with the motion, Respondent has submitted several exhibits. (Mot. to Dismiss.) Reading Respondent's arguments and submitted exhibits, it is clear that Respondent is, in essence, arguing the merits of Petitioner's claims rather than a procedural deficiency (such as lack of exhaustion or federal jurisdiction).

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.[1] The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. <u>See, e.g.</u>, <u>O'Bremski v. Maass</u>, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); <u>White v. Lewis</u>, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default); <u>Hillery v. Pulley</u>, 533 F.Supp.

---

[1]The Rules Governing Section 2254 Cases may be applied to petitions for writ of habeas corpus other than those brought under § 2254 at the Court's discretion. <u>See</u>, Rule 1 of the Rules Governing Section 2254 Cases; Fed. R. Civ. P 81(a)(4).

1189, 1194 & n.12 (E.D. Cal. 1982) (same). Thus, a respondent can file a motion to dismiss after the Court orders a response, and the Court should use Rule 4 standards to review the motion. See Hillery, 533 F. Supp. at 1194 & n. 12.

As discussed above, the Rules Governing Section 2254 Cases do not expressly provide for motion practice; rather, such motion practice must be inferred from the structure of the rules themselves. Hillery, 533 F.Supp. at 1195. For example, Rule 12 provides as follows:

> The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.

Rule 12 of the Rules Governing Section 2254 Cases.

Because of the peculiar and unique nature of habeas proceedings, as a general rule, neither motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) nor summary judgment motions under Rule 56 are particularly appropriate. Given the nature of a habeas corpus petition, Anderson v. Butler, 886 F.2d 111, 113 (5th Cir. 1989) (modern habeas corpus procedure has the same function as an ordinary appeal); O'Neal v. McAninch, 513 U.S. 432, 442 (1995) (federal court's function in habeas corpus proceedings is to "review errors in state criminal trials" (emphasis omitted)), motions for summary judgment are unnecessary because petitions may be decided immediately by the Court following submission of the pleadings provided no material issues of fact exist.

Similarly, a Rule 12(b)(6) motion attacking the sufficiency of the pleading in the petition does not comfortably fit within the habeas landscape either. As mentioned, the district court is already tasked with the responsibility to initially screen the petition for sufficiency pursuant to Rule 4 of the Rules Governing Section 2254 cases. Here, the Court's order requiring Respondent to file a response was issued only after the Court had undertaken its Rule 4 obligation. Thus, at that point, the Court had, by implication, already found the petition's pleadings sufficient to proceed. Premising a motion to dismiss on Rule 12(b)(6), as Respondent has done, is therefore redundant in that it essentially requests that the Court to conduct a pleading examination already completed.

Thus, although procedurally inappropriate, the Court is of the opinion that denying

Respondent's motion to dismiss solely on narrow procedural grounds and then requiring an answer that would, in all likelihood, raise the same issue again based on the same evidence, would be an inefficient use of the parties' time as well as the Court's resources. Instead, the Court has the inherent power under the Rules Governing Section 2254 Cases to construe Respondent's motion as an answer on the merits. So construing the filing, the Court would then be in a position to rule on the merits of the petition without the need for further development of the record or additional briefing.

Such an approach is entirely consistent with the Rules Governing Section 2254 Cases. Historically, habeas practice provided only two dispositions for petitions: summary dismissal or a full hearing. Hillery, 533 F.Supp. at 1196. However, the drafters of the present Rules Governing Section 2254 cases believed that, in some instances, an intermediate process, through the device of an expanded record under Rule 7 might be advantageous. Id. "The purpose [of Rule 7] is to enable the judge to dispose of some habeas petitions not dismissed on the pleadings, without the time and expense required for an evidentiary hearing…Authorizing expansion of the record will, hopefully, eliminate some unnecessary hearings." Advisory Committee Note to Rule 7.

In conclusion, the Court shall consider the present motion as an answer, and determine the rights of the parties accordingly.

IV.   **ANALYSIS OF CLAIMS**

  A.   **Are the BOP Regulations Impermissibly Vague?**

Petitioner argues that  Prohibited Act Code section 397 did not provide him sufficient notice that his conduct was prohibited. Specifically, he contends that allowing another inmate to speak on the telephone is not specifically prohibited by the regulation and that a reasonable person would not think that this conduct constituted possession or use of another inmate's PIN. (See, e.g., Traverse at 2-3.) The Court liberally construes this as a claim that Code 397 is unconstitutionally vague as applied to Petitioner's conduct.

"Due process requires fair notice of what conduct is prohibited before a sanction can be imposed." Newell v. Sauser, 79 F.3d 115, 117 (9th Cir. 1996) (citing Grayned v. City of

1  Rockford, 408 U.S. 104, 108 (1972)). While "[d]ue process undoubtedly requires certain

2  minimal standards of specificity in prison regulations," "the degree of specificity required of

3  such regulations is [not] as strict in every instance as that required of ordinary criminal

4  sanctions." Meyers v. Alldredge, 492 F.2d 296, 310 (3d Cir. 1974); see also Adams v. Gunnell,

5  729 F.2d 362, 369-70 (5th Cir. 1984). In the prison context, "'the law requires less in the way

6  of notice, and places a greater burden on the individual to make inquiry or ask permission

7  before acting.'" Meyers, 492 F.2d at 311 (quoting Landman v. Royster, 333 F.Supp. 621,

8  655-56 (E.D. Va. 1971)). Federal courts defer to prison authorities' interpretation of prison

9  rules "unless fair notice was clearly lacking." Hadden v. Howard, 713 F.2d 1003, 1008 (3d Cir.

10  1974).

11          Under the circumstances here, fair notice was not clearly lacking. The BOP

12  promulgated regulations pertaining to telephone use and listed examples of violations

13  including "conference calling, possession and/or use of another inmate's PIN number,

14  three-way calling, and providing false information for preparation of a telephone list." See 28

15  C.F.R. § 541.13, Table 3. The regulation puts a reasonable prisoner on reasonable notice that

16  sharing one's phone privileges can subject him to sanction; a similarly reasonable prisoner

17  would conclude that sharing a privileged phone call falls within the scope of sharing privileges.

18  That the regulation  does not delineate each and every possible variation of potential phone

19  violation does not render it impermissibly vague. Based on the examples provided, it is inferred

20  that other similar conduct may also be in violation of Code 397. Code 397 was not drawn with

21  such generality that Petitioner did not have fair notice that his conduct could violate the rule.

22  See Cowan v. Sanders, 2010 U.S. Dist. LEXIS 15211, *11-13 (C.D. Cal. Jan. 19, 2010). Code

23  397 prohibits use of telephones for abuses other than criminal activity. Here, Petitioner allowed

24  another inmate to talk on a call he placed to a mutual acquaintance.  As Code 397 provides

25  as an example of violation the use of three way calling or the use of another inmate's PIN,

26  Petitioner was provided adequate notice that allowing another inmate to use the phone during

27  a call which he was privileged to place could also be a violation of Code 397.  Because Code

28  397 was sufficient to satisfy the due process requirement of fair notice in the prison context,

1  habeas relief is unwarranted on this claim.

2  **B.    Officers Lacked Training**

3  Petitioner asserts that Unit Disciplinary Committee ("UDC") members involved in the
4  present investigation were not properly certified by the Bureau of Prisons.

5  Petitioner is confined at Taft Correctional Institution which is  owned and operated by
6  Management & Training Corporation, a private company. Petitioner asserts that the UDC must
7  be certified by the BOP in order to participate in hearings. BOP Policy Statement 5270.08
8  does provide that: "[a] staff member may not sit on the Unit Disciplinary Committee (UDC)
9  without first successfully completing the self-study program for UDC certification. The program
10 involves completion of a series of training modules. Each warden shall select at least one UDC
11 Trainer to review and monitor the progress of staff participating in the self-study program."

12 The Court has reviewed the pertinent regulations regarding the delegation of authority
13 to contractor employees to discipline. Regulations define the purpose and scope of inmate
14 discipline and special housing units. The regulations apply to inmates whose behavior is not
15 in compliance with BOP rules  and to "all persons committed to the care, custody, and control
16 (direct or constructive) of the Bureau of Prisons." 28 C.F.R. § 541.10(a). Only "institution staff"
17 may take disciplinary action within Bureau rules and institution guidelines. 28 C.F.R. §
18 541.10(b)(1), (2). However, regulations require the warden to delegate to institution staff
19 members the authority to hold the initial hearing. 28 C.F.R. § 541.15. A DHO is defined by
20 regulation as a one-person, independent, discipline hearing officer who is responsible for
21 conducting institution discipline hearings and who imposes appropriate sanctions for incidents
22 of inmate misconduct referred for disposition following the hearing before the UDC. 28 C.F.R.
23 § 541.2(a). Each BOP institution shall have an independent DHO who must be trained and
24 certified as a DHO and meet the other requirements. 28 C.F.R. § 541.16. An institution also
25 has a Unit Disciplinary Committee which is "one or more institution staff members delegated
26 by the Warden the authority and duty to hold an initial hearing upon completion of the
27 investigation concerning alleged charge(s) of inmate misconduct. The Warden shall authorize
28 these staff members to impose minor sanctions... for violation of prohibited act(s)." 28 C.F.R.

§ 541.2(b). Further, according to BOP Policy Statement 5270.08, "Only the DHO can take action to disallow good conduct time. A UDC may recommend a disallowance to the DHO, but a UDC may not independently disallow good conduct time."

In support of the Motion to Dismiss, Respondent asserts that the UDC members involved in the hearing were certified. (Mot. To Dismiss at 4.) Respondent provides no evidence to support the bare assertion. Regardless, the fact that the UDC members may not have been certified does not present a denial of Petitioner's due process guarantees. See Griffin v. Ebbert, 2008 U.S. Dist. LEXIS 38398, 2008 WL 2036817 (M.D. Pa. 2008) (A prison's failure to comply with its own procedures will not result in a due process violation as long as the inmate is provided with appropriate due process protections.); Queen v. Cross, 2010 U.S. Dist. LEXIS 52500, *10-11 (N.D. W. Va. Feb. 2, 2010). Significantly, while Petitioner asserts that the UDC members were not certified, he has not alleged that the DHO lacked appropriate training and certification. The DHO oversaw Petitioner's disciplinary proceeding and found Petitioner guilty of the unauthorized conduct. The fact that peripheral officers involved in Petitioner's disciplinary hearing may not have been appropriately certified (specifically when Petitioner was provided adequate due process, as described below) is not a basis for habeas relief.

## C. Petitioner's Due Process Rights

Petitioner is only entitled to limited due process considerations with regard to prison disciplinary proceedings. The law concerning a prisoner's Fourteenth Amendment liberty interest in good time credit is set forth in Wolff v. McDonnell, 418 U.S. 539 (1974). While the United States Constitution does not guarantee good time credit, an inmate has a liberty interest in good time credit when a state statute provides such a right and delineates that it is not to be taken away except for serious misconduct. See id. at 557.

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff, 418 U.S. at 539. Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings. Id. at 556. Thus, a prisoner's due

1    process rights are moderated by the "legitimate institutional needs" of a prison. <u>Bostic v.</u>
2    <u>Carlson</u>, 884 F.2d 1267, 1269 (9th Cir. 1989), citing <u>Superintendent, etc. v. Hill</u>, 472 U.S. 445,
3    454-455 (1984).

4         When a prison disciplinary proceeding may result in the loss of good time credits, due
5    process requires that the prisoner receive: (1) advance written notice of at least 24 hours of
6    the disciplinary charges; (2) an opportunity, when consistent with institutional safety and
7    correctional goals, to call witnesses and present documentary evidence in his defense; and
8    (3) a written statement by the fact-finder of the evidence relied on and the reasons for the
9    disciplinary action. <u>Hill</u>, 472 U.S. at 454; <u>Wolff</u>, 418 U.S. at 563-567.

10        In addition, due process requires that the decision be supported by "some evidence."
11   <u>Hill</u>, 472 U.S. at 455, citing <u>United States ex rel. Vajtauer v. Commissioner of Immigration</u>, 273
12   U.S. 103, 106 (1927). In <u>Hill</u>, the United States Supreme Court explained that this standard
13   is met if "there was some evidence from which the conclusion of the administrative tribunal
14   could be deduced . . ." <u>Id.</u>  "The Federal Constitution does not require evidence that logically
15   precludes any conclusion but the one reached by the disciplinary board." <u>Hill</u> at 457. Even
16   where, as in <u>Hill</u>, the evidence in the case "might be characterized as meager," if "the record
17   is not so devoid of evidence that the findings of the disciplinary board were without support or
18   otherwise arbitrary," those findings must be upheld. <u>Id.</u> Thus, if the procedures listed above
19   are afforded to an inmate, and "some evidence" supports the hearing officer's decision, the
20   requirements of due process are satisfied. <u>Hill</u>, 472 U.S. at 455; <u>Bostic v. Carlson</u>, 884 F.2d
21   at 1269-1270.

22        Here Petitioner has claimed that the language of the violation for which he was found
23   guilty is ambiguous and that UDC members were not properly certified. Neither claim
24   addresses Petitioner's due process rights under <u>Wolff</u> or <u>Hill</u>. Even if Petitioner had raised
25   claims regarding his constitutionally guaranteed due process rights, such claims lack merit.

26        The evidence presented at the disciplinary hearing and relied upon by the DHO
27   included an incident report filed by Officer K. Sy. (Mot. to Dismiss, ex. A). According to the
28   report, while monitoring phone calls the officer witnessed Petitioner allowing another inmate

1    to speak on a phone call he had placed. (<u>Id.</u>) According to the investigation paperwork,

2    Petitioner was provided a copy of the incident report and advised of his rights (<u>Id.</u>) At the

3    disciplinary hearing, Petitioner admitted that he let the other inmate talk on the phone. (<u>Id.</u>) On

4    March 25, 2009, a written decision was issued and served on Petitioner. (<u>Id.</u>) After reviewing

5    all of the evidence, the DHO found Petitioner guilty of committing the prohibited act.

6    Accordingly, "some evidence" exists to support a finding that Petitioner committed the

7    prohibited act of using the telephone for abuses other than criminal activity by allowing another

8    inmate to talk on a phone call placed by Petitioner. Under such circumstances, the "some

9    evidence" standard has been met. <u>See</u> <u>Hill</u>, 472 U.S. at 455. Accordingly, Petitioner is not

10   entitled to relief.

11   **V.      <u>RECOMMENDATION</u>**

12          For the reasons discussed herein, the Court RECOMMENDS that Respondent's Motion

13   to Dismiss be GRANTED and the petition be dismissed with prejudice.

14          These findings and recommendations are submitted to the United States District Court

15   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule

16   304 of the Local Rules of Practice for the United States District Court, Eastern District of

17   California. Within fourteen (14) days after being served with a copy, any party may file written

18   objections with the Court and serve a copy on all parties. Such a document should be

19   captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the

20   objections shall be served and filed within seven (7) days (plus three days if served by mail)

21   after service of the objections. The Court will then review the Magistrate Judge's ruling

22   pursuant to 28 U.S.C. § 636 (b)(1)(c). The parties are advised that failure to file objections

23   within the specified time may waive the right to appeal the District Court's order. <u>Martinez v.</u>

24   <u>Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

25

26   IT IS SO ORDERED.

27   Dated:   July 20, 2011                          /s/ *Michael J. Seng*
                                                      UNITED STATES MAGISTRATE JUDGE
28